FILED

2026 May-05  PM 04:12
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**MIDDLE DIVISION**

| | |
|---|---|
| **CATHERINE B. CROCKETT,**<br>    Plaintiff,<br><br>**v.**<br><br>**JESSICA VIRGINIA**<br>**RUTLEDGE,** *et al.***,**<br>    Defendants. | **Case No. 4:25-cv-1262-CLM** |

## <u>MEMORANDUM OPINION</u>

Pro se Plaintiff Catherine Crockett sues 13 Defendants—including mortgage companies, a trust, attorneys, judges, and court staff—for events arising from Defendants' roles in the allegedly unlawful foreclosure of her home and subsequent litigation. All Defendants move to dismiss Crockett's operative complaint. And Crockett has filed various motions of her own. For the reasons explained within, the court:

- **DENIES** Crockett's Motion for Leave to File Supplemental Pleading, (doc. 110);
- **DENIES** Crockett's Supplemental Pleading and Motion for Assessment of Damages, (doc. 142);
- **GRANTS** Defendants Kathryn Burke, Andrew Weathington, and Billy R Weathington, Jr.'s Motion to Dismiss, (doc. 42);
- **GRANTS** Defendants Enslen Lamberth Crowe, Jessica Virginia Rutledge, and Tiffany & Bosco PA's Motion to Dismiss, (doc. 47);
- **GRANTS** Defendant Ginnie Mae REMIC Trust 2021-018's Motion to Dismiss, (doc. 65);
- **GRANTS** Defendants Mortgage Research Center LLC, Mr. Cooper Group Inc, Nationstar Mortgage Holdings Inc, Nationstar Mortgage LLC, and Xome Inc.'s Motion to Dismiss, (doc. 66);

- **DENIES AS MOOT** Defendants Enslen Lamberth Crowe, Jessica Virginia Rutledge, and Tiffany & Bosco PA's Motion to Strike, (doc. 48);
- **DENIES AS MOOT** Crockett's Motion to Preserve and Certify Docket Record, (doc. 101);
- **DENIES AS MOOT** Crockett's Motion for Clarification, (doc. 111);
- **DENIES AS MOOT** Crockett's Motion to Address Discrepancy, (doc. 120); and,
- **DENIES AS MOOT** Crockett's Motion to Preserve Objection and Request for Judicial Notice, (doc. 125).

_____

## BACKGROUND

Crockett filed this case on August 5, 2025. (Doc. 1). She amended her complaint on October 10, 2025, (doc. 26), which now serves as the operative complaint. As Crockett puts it, "[t]his action arises from an unlawful non-judicial foreclosure, concealment of the true creditor, and related misconduct by Defendants, resulting in a fraudulent foreclosure deed, clouded title, and continuing harm to Plaintiff's property and credit." (Doc. 26, p. 2). So here's the story.

### A. The Loan and Foreclosure

Crockett wanted to buy a house located at 1891 Cook Springs Rd., Pell City, AL 35125 (the "Property"). Like most people, she needed a loan to finance the purchase of the house. So on December 7, 2020, Crockett executed a Mortgage and Promissory Note and obtained a loan for $275,000 that encumbered the Property. The Lender on Crockett's Promissory Note and Mortgage was listed as Mortgage Research Center, LLC d/b/a Veterans United Home Loans ("Veterans"). And the mortgagee was identified as Mortgage Electronic Registration Systems, Inc. ("MERS"), acting as nominee for Veterans. (Doc. 66-2, p. 2). The Mortgage was recorded in the Office of the Judge of Probate of St. Clair County, Alabama on December 8, 2020.

2

Crockett's Promissory Note was "almost immediately securitized and transferred to Ginnie Mae REMIC Trust 2021-018 in or around January 2021 without [her] knowledge." (Doc. 26, p. 5). Around the same time, Crockett says that her first mortgage payment "was endorsed 'DEPOSIT TO NATIONSTAR – CREDIT PAYEE ABS,' revealing payments were directed to Nationstar rather than [Veterans], indicating a concealed transfer/servicing agreement." (Doc. 26, p. 6). According to Crockett, "[t]hese undisclosed transfers materially altered the risk, cost, and enforceability of the contract" and constitute violations of federal and state law because "Nationstar later appeared as 'servicer' despite no disclosed contractual relationship with [Crockett]." (Doc. 26, p. 6).

In June 2023, MERS assigned the mortgage to Veterans. (Doc. 66-3, p. 2). At some point earlier that year, Veterans alleges that Crockett defaulted on her loan. (Doc. 66, p. 4). Veterans also says that Crockett's mortgage contained a power of sale clause that was triggered upon Crockett's default, so Veterans initiated foreclosure. (Doc. 66, p. 4). Veterans alleges it provided Crockett notice of default, her right to cure, and that Nationstar Mortgage LLC d/b/a Mr. Cooper ("Nationstar") was servicing her mortgage loan on behalf of Veterans. Crockett allegedly failed to cure her default, so Nationstar retained the Tiffany & Bosco law firm ("T&B") to assist with processing a nonjudicial foreclosure sale of the Property. Crockett characterizes T&B's involvement as "acting as a debt collector for [Veterans]." (Doc. 26, p. 6).

## B. The Foreclosure Sale

The nonjudicial foreclosure sale of the Property ultimately took place on May 2, 2025, where Veterans obtained title to the Property upon the highest bid of $299,562.06. (Doc. 47-1). T&B attorneys Enslen Lamberth Crowe and Jessica Virginia Rutledge recorded the foreclosure deed in the St. Clair County Office of Probate, "which on its face conveys the property from [Veterans] to itself, despite absence of verified power of attorney, investor authorization, or proof of standing." (Doc. 26, p. 7).

Crockett contends that the foreclosure deed was improperly executed, without legal authority, and was thus invalid.

### C. Crockett's State Court Actions

In February 2025—*i.e.,* three months before the foreclosure sale—Crockett recorded a "Quitclaim Deed transferring the property into her family trust [] and a Notice of Lis Pendens[.]" (Docs. 26, p. 7; 66-7). She also recorded an "updated Security Instrument" at the probate office in which she purported to remove MERS as nominee (for Veterans) on the Mortgage, revoke all prior power of attorney consent granted to Veterans, appoint the "Zulu Family Trust" as the nominee/trustee with power of sale, and appoint the "Crockett Crawford & Ball Estate Trust" as beneficiary. (Docs. 26, pp. 6, 35, 37). Crockett's "Revocation of Power of Attorney" by its own terms "revoked and terminated" "all security interest granted in connection with any and all contracts" she entered with Veterans before the revocation. (Doc. 26, p. 37). Helpfully, Crockett included a few of these documents as exhibits to her Amended Complaint:

MORTGAGE RESEARCH CENTER, LLC
1400 Forum Boulevard
Columbia, Missouri 65203

Catherine-Beatrice: Crockett
Post Office Box 760
Odenville, Alabama 35120
February 13, 2025

Re: 1891 Cook Springs Road, Pell City, Alabama 35125

To All Parties Concerned:

Please be advised that the above-referenced Property has been transferred to a trust (copy attached).

As you are not doing your fiduciary duty you are duly fired, and on that basis, I revoke *nunc pro tunc,* any and all Power of Attorney Consent effective as of December 7, 2020. Kindly take notice that the new trustee is ZULU FAMILY TRUST and the new beneficiary is the CROCKETT CRAWFORD & BALL ESTATE TRUST.

Please notify any and all interested parties of this change and action as well as direct/order that all forms, cards, documents and instruments bearing my autograph/signature in connection with the above-referenced property be amended to document and reflect this change. No answer to this instruction is required, however an acknowledgment would be greatly appreciated.

If you have any questions or concerns kindly contact the trustee.

WITNESS MY HAND AND SEAL

*Catherine B. Crockett, by Amma Zulu, Attorney-in-Fact* (Seal)
Catherine-Beatrice: Crockett, by Amma: Zulu, Attorney-in-Fact

Commonwealth of Virginia

(Doc. 26, p. 35).

On February 13, 2025, the above entities were duly noticed of Trustee Change and Revocation of Power of Attorney Consent via USPS Certified Mail. The Power of Attorney Consent granted to Mortgage Research Center, LLC dba Veterans United Home Loans on December 7, 2020 to act on my behalf was revoked and all actions taken under that Power of Attorney revoked as well. In addition, all security interest granted in connection with any and all contracts entered into between us, Mortgage Research Center, LLC dba Veterans United Home Loans, prior to this revocation are revoked and terminated. This revocation applies to all relevant rights, privileges, and authorizations previously bestowed upon Mortgage Research Center, LLC dba Veterans United Home Loans, successors and assigns.

_____
Catherine-Beatrice: Crockett, Grantor

(Doc. 26, p. 37). Apparently, Crockett also published notice of her "revocation and pending claims" in four local newspapers during March and April 2025. (Doc. 26, p. 6).

On April 30, 2025—two days before the foreclosure sale—a party identified as "Zulu Family Trust, as Trustee," filed a Petition to Quiet Title on the Property in the Circuit Court of St. Clair County, Alabama. (Case No. 75-CV-2025-900142). (Doc. 42-1). The Petition was signed by "Amma Zulu" as the "Authorized Representative" of the plaintiff.[1] The party identified as Amma Zulu is a trustee of the "Zulu Family Trust." (Doc. 66-9). The Zulu Family Trust, in turn, is a trustee for the "Catherine B Crockett Estate," another trust, which may or may not be distinct from the "Catherine B. Crockett Living Estate Trust, d/b/a Catherine B Crockett Trust," or the "Crockett Crawford & Ball Estate Trust." (Docs.

---

[1] Despite its best effort, the court cannot readily determine the true identity of "Amma Zulu." Plaintiff Crockett has at times referred to Amma Zulu as her daughter. (*See* docs. 33; 34, ¶ 5). At other times, "Amma Zulu" signs portions of Crockett's filings that typically would be signed by Crockett as the pro se plaintiff. For example, early on, Crockett would sign at the bottom of her motion or notice filing, and Amma Zulu would sign the accompanying certificate of service. (*See e.g.*, docs. 13, p. 9; 18, p. 9). And the "Revocation of Power of Attorney" Crockett attached to her amended complaint was signed by "Catherine-Beatrice: Crockett, by Amma: Zulu, Attorney-in-Fact." (Doc. 26, p. 35). More recently, however, Crockett has signed both her filings and certificates of service herself, and "Amma Zulu" has not been referenced in any of Crockett's filings. (*See e.g.*, doc. 135, p. 9).

26, p. 35; 66-9). Bottom line: it appears that all roads (and trusts) lead back to Catherine Crockett.

Circuit Judge Billy R. Weathington, Jr., was assigned to the Quiet Title action. Defendants in the quiet title action, most of whom are also Defendants here, moved to strike the complaint. They argued that "Ms. Zulu" was engaging in the unauthorized practice of law because she is not a licensed attorney and therefore could not represent anyone other than herself. (Doc. 66, p. 5). Circuit Judge Weathington apparently held a hearing, granted the motion to strike, and gave "Ms. Zulu" until September 16, 2025, to obtain legal representation for the trust. (Doc. 34, ¶ 5). Rather than obtain counsel, Ms. Zulu filed a supplemental pleading in which she named Presiding Circuit Judge Billy Weathington, Jr., and his son, Probate Judge Andrew Weathington, as defendants in the quiet title action. (Doc. 42-10). Judge Weathington recused himself, (*see id.*), and the case was later dismissed by a different judge.

### D. Current Federal Action

1. *The Complaint*: Around the same time that Judge Weathington ordered Amma Zulu to obtain counsel in state court action, Catherine Crockett, with the assistance of Amma Zulu, filed the initial complaint in this federal case.[2] Crockett later amended her complaint against the following Defendants: Jessica Viginia Rutledge, Enslen Lamberth Crowe, and Tiffany & Boscoe PA (collectively "the T&B Defendants"); Nationstar Mortgage Holdings Inc., Nationstar Mortgage LLC, Mr. Cooper Group Inc. Mortgage Research Center LLC (d/b/a Veterans United Home Loans), and Xome Inc. (collectively "the Nationstar Defendants"); Ginnie Mae REMIC Trust 2021-018 (properly identified as "U.S. Bank National Association" ("U.S. Bank")); and Judge Billy R. Weathington, Jr., Judge Andrew Weathington, and Kathryn Burke, the St. Clair County Clerk of Court

---

[2] Crockett later filed a "Notice of Corrected Certificates of Service" in which she explained that although Amma Zulu had signed many of the earlier filings, Zulu only served in a "clerical capacity" and that Crockett personally certified proper service on Defendants. (Doc. 27).

(collectively, "the St. Clair County Defendants"), in their official and individual capacities. (Doc. 26).

Crockett's amended complaint asserts seven counts:

- (Count I) State Law Wrongful Foreclosure;
- (Count II) Violations of the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*;
- (Count III) Violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*; and
- (Count IV) Civil RICO, 18 U.S.C. § 1961-1964 against (at least) the Nationstar Defendants and the T&B Defendants;
- (Count V) "Fraud and Misrepresentation" against the Nationstar Defendants, the T&B Defendants, and possibly U.S. Bank;
- (Count VI) "Slander of Title, Credit Defamation, and Emotional Distress" presumably against the Nationstar Defendants; and
- (Count VII) Civil Rights Violations under 42 U.S.C. §§ 1983, 1985, and 1986 against the Nationstar Defendants, the T&B Defendants, and the St. Clair County Defendants.

Crockett seeks multiple forms of declaratory and injunctive relief against Defendants, plus money damages not less than $111 million. (Doc. 26, pp. 15-16).

2. *Post-Complaint Filings*: All Defendants move to dismiss Crockett's amended complaint. (Docs. 42, 47, 65, 66). Crockett opposes dismissal and has separately filed several of her own motions that remain pending. (*See* Docs. 101, 110, 111, 120, 125, 142). Below, the court starts by addressing Crockett's motions to supplement her pleadings. The court then moves to the merits of Crockett's claims and Defendants' motions to dismiss them.

## STANDARD OF REVIEW

The court begins with the lens through which it must view Crockett's complaint. The Eleventh Circuit is clear that "*pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys," and should be "liberally construed." *Hughes v. Lott*, 350 F.3d 1157, 1160 (11th Cir. 2003) (quoting *Tannenbaum v. U.S.*, 148 F.3d 1261, 1263 (11th Cir. 1998)). So this court construes Crockett's pro se complaint liberally, but the court cannot "rewrite an otherwise deficient pleading in order to sustain an action." *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168–69 (11th Cir. 2014).

In reviewing a complaint for failure to state a claim, the court accepts the allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *See Lanfear v. Home Depot, Inc.*, 679 F.3d 1267, 1275 (11th Cir. 2012). The ultimate question is whether Crockett's allegations, when accepted as true, "plausibly give rise to an entitlement of relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Conclusory and general assertions are insufficient to state a claim on which relief may be granted. *See id*.

Normally, a court's analysis at the Rule 12 stage is limited to the pleadings and the attachments to it. But "when resolving a motion to dismiss or a motion for judgment on the pleadings, a court may properly consider a document not referred to or attached to a complaint under the incorporation-by-reference doctrine if the document is (1) central to the plaintiff's claims; and (2) undisputed, meaning that its authenticity is not challenged." *Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024). The requirements of the incorporation-by-reference doctrine are satisfied here. Both Crockett and the Defendants rely on publicly recorded documents (*e.g.*, mortgages, mortgage assignments, deeds, state court filings, etc.), which are referenced throughout Crockett's amended complaint, are central to her claims, and are undisputed as to their authenticity. So the court will consider those documents in its analysis.

In addition, "Federal Rule of Evidence 201 permits a court to 'judicially notice a fact that is not subject to reasonable dispute because it ... can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" *Paez v. Sec'y, Fla. Dep't of Corr.*, 947 F.3d 649, 651 (11th Cir. 2020) (*quoting* Fed. R. Evid. 201(b)(2)); *see also Collier v. Buckner,* 303 F. Supp. 3d 1232, 1258 n.24 (M.D. Ala. 2018) ("A court may take judicial notice of the contents of public records, such as state court proceedings, without converting a motion to dismiss into a summary judgment motion.") (*citing Horne v. Potter*, 392 Fed. Appx. 800, 802 (11th Cir. 2010)). So the court can take judicial notice of the state court filings from *Zulu Fam. Trust, as Trustee v. Mortgage Research Ctr. LLC d/b/a Veterans United Home Loans, et al.*, in the Circuit Court of St. Clair County, Alabama, Case No. 75-CV-2025-900142.00.

The state court filings are not subject to reasonable dispute, and their contents can be accurately determined from The Alabama Trial Court System, a source whose accuracy cannot reasonably be questioned. In fact, both the Defendants and Crockett appear to request that this court take judicial notice of the state court proceedings in adjudicating this matter.[3] So the court will take judicial notice of the existence of the state court documents.

---

[3] *See* Doc. 34, Crockett's *Affidavit of Procedural Irregularities And Bias Indicators* in which she describes aspects of the state court proceeding and states: "Affiant submits this record for judicial notice and preservation pursuant to Fed. R. Evid. 201, Fed. R. Civ. P. 77(b), and the inherent authority of the Court to ensure transparency and fairness in its proceedings." (Doc. 34, p. 3).

## DISCUSSION

Before the court can address the merits of Crockett's claims, the court must determine what the claims are. Crockett's amended complaint (doc. 26) is operative, and it is the document that all parties briefed in their motions to dismiss. But now, after that briefing has concluded, Crockett attempts to expand her claims by again supplementing her complaint. So the court starts with Crockett's motions for leave to supplement. After narrowing the claims at issue, court will then explain why Crockett's amended complaint should be dismissed as an impermissible shotgun pleading. Next, because each of Crockett's claims are independently insufficient, the court will address them one by one. And finally, the court will explain why the appropriate outcome is dismissal of Crockett's claims with prejudice.

## I. Attempts to Expand the Operative Complaint

Crockett has two pending motions that attempt to expand the claims in her operative complaint. In the first, (doc. 110), Crockett seeks to add me as a Defendant in this lawsuit. In the second, a supplemental pleading and "motion for assessment of damages based on continuing unauthorized entry," (doc. 142), Crockett attempts to add a new claim against existing Defendants. Both motions are due to be denied.

### A. Motion for Leave to File Supplemental Pleading (Doc. 110)

Document 110 is Crockett's motion is to "supplement[] the record to add the additional Defendant judge Corey L. Maze and to assert allegations based on events that occurred after the filing of the amended complaint." (Doc. 11, p. 7).

The alleged conduct underlying Crockett's motion for leave to supplement her pleading is closely related to other motions she has filed, including a motion for recusal, motion to vacate, and motion to stay. (*See* docs. 103, 136, 141). The court has addressed those motions and denied them. (Doc. 143). So the court will not rehash those issues in this opinion. For the same reason that recusal would be inappropriate, allowing

Crockett to supplement her pleading to complain of the same alleged conduct would be inappropriate.

This is not the first time that Crockett has attempted to sue the judge adjudicating her claims when she becomes unhappy with a decision. After Judge Billy Weathington ordered the Zulu Family Trust to obtain counsel in the Quiet Title action, Crockett immediately supplemented her pleading to add Judge Billy Weathington, and his son, Probate Judge Andrew Weathington, as Defendants in that case. (*See* doc. 42, p. 3). As he explained in his recusal order, Judge Weathington did not disqualify himself from the case "because he is employed by the State of Alabama, because he is a member of the State Bar Association, or because [Crockett] named [him] as a party-defendant." (Doc. 42-10). In fact, Judge Weathington noted that "a litigant cannot create 'an artificial appearance of bias or prejudice' through his or her own action in order to secure the judge's disqualification." (*Id.*) Judge Weathington only recused himself because Crockett also named his son as a Defendant. (*See* doc. 42-10).

Employing a similar tactic in this case will not yield the same result for Crockett. So the court **DENIES** Crockett's motion for leave to file supplemental pleading. (Doc. 110).

### B. The Tresspass Claim and Motion for Damages (Doc. 142)

Since September 2025, Crockett has filed many notices, supplements, and motions in which she alleges that individuals affiliated with Defendants have trespassed on her property. She filed her first supplemental pleading to this effect on September 26, 2025. (Doc. 18). Crockett then amended her complaint on October 10, 2025, but the new pleading did not assert any independent claims related to the alleged trespass. (*See generally* doc. 26). The only mention of the alleged trespass in the amended complaint was one paragraph within her Count 1 Wrongful Foreclosure claim in which Crockett asserts:

> In August-September 2025, Plaintiff experienced harassment and intimidation, including (a) conflicted state

> judicial handling later followed by recusal; (b) trespass by realtor agents taping foreclosure flyers (including Mr. Cooper-branded flyer); (c) sheriff presence at her home; (d) fraudulent CFPB complaint filings in Plaintiff's name; and (e) repeated solicitations addressed to "Occupant."

(Doc. 26, pp. 10-11).

Crockett referenced the alleged trespass in several "Notices" over the following months, (*see* docs. 28, 117, 127). These filings preceded Crockett's motion for temporary restraining order (TRO), (doc. 130), which the court denied, (doc. 131). And Crockett followed the court's denial of her TRO with a "NOTICE of Liability for Trespass," (doc. 132), and a supplemental pleading and "Motion for Assessment of Damages Based on Continuing Unauthorized Entry," (doc. 142).

After Crockett amended her complaint, she never sought the court's leave to supplement her pleadings to add a trespass claim as required by Federal Rule of Civil Procedure 15(d). Crockett simply filed notices of her supplemental pleadings and now moves for an "assessment of damages" on the trespass claim that she unilaterally tried to insert into this case. And importantly, Crockett's most recent flurry of notices and motions related to the alleged trespass have come after the parties fully briefed the pending motions to dismiss Crockett's amended complaint. (*See* docs. 117, 127, 132, 142). None of the parties briefed the purported trespass claim, likely because it could not be reasonably understood as part of Crockett's amended complaint.

The decision whether to grant leave to amend a pleading is within the sound discretion of the district court and is not automatic. *See Nat'l. Service Indus., Inc. v. Vafla Corp.*, 694 F.2d 246, 249 (11th Cir. 1982). Although the decision to grant or deny a motion to amend a complaint is within the discretion of the court, "a justifying reason must be apparent for denial of a motion to amend." *Moore v. Baker*, 989 F.2d 1129, 1131 (11th Cir. 1993). The court may consider factors such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure

12

deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of the amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). *See also Deaton v. S. Highland Child Dev. Ctr., Inc.*, 405 So. 3d 244, 257 (Ala. 2024) (affirming circuit court striking plaintiff's claim in second amended complaint based on undue delay where the plaintiff knew or should have known information underlying the new allegation five months earlier).

The court finds that allowing Crockett to supplement her pleading again, after amending her complaint, to add the alleged trespass claim would unduly delay this action and cause undue prejudice to the Defendants. Crockett knew about the alleged trespass at least as early as September 2025. (*See* doc. 18). Yet she failed to include a trespass claim when she amended her complaint on October 10, 2025. (Doc. 26). Because there was no trespass claim in the amended complaint, none of the Defendants—all of whom Crockett alleges are implicated in the trespass—briefed that claim on the motions to dismiss. So the court will not allow Crockett to supplement her pleadings *post hoc* and require all 13 Defendants to rebrief their motions to dismiss, thereby kicking the can on a resolution of this matter months down the road.

The court therefore **DENIES** Crockett's "Supplemental Pleading," which the court construes a motion for leave to file supplemental pleading, and **DENIES AS MOOT** Crockett's "motion for assessment of damages based on continuing unauthorized entry." (Doc. 142).

## II. Analysis of the Operative Complaint

Nearly all the Defendants move to dismiss Crockett's entire amended complaint as an impermissible shotgun pleading. (Docs. 42, 65, 66). They're right; Crockett's complaint is a shotgun pleading. And because the shotgun pleading analysis pertains to Crockett's complaint as a whole, the court starts there. The court could end there too, except Crockett's pleading history (*e.g.,* appeals and mandamus petitions) suggests the court address Defendants' other arguments too. So for Crockett's benefit, and that of the Circuit Court that will eventually read

13

this opinion, the court will walk through Crockett's operative complaint count by count. In doing so, it becomes clear that even if the court chose to overlook Crockett's shotgun pleading problems, all seven of her claims fall short in their own right.

### A. Shotgun Pleading

The Eleventh Circuit has identified four types of shotgun pleadings, all of which are prohibited, and explains them as follows:

> The most common type—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. The next most common type … is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief. Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against. The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests.

*Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321-23 (11th Cir. 2015).

Crockett's amended complaint shares characteristics of multiple categories of shotgun pleadings. It falls into the first category of shotgun

14

pleading because each of Crockett's counts reallege all the paragraphs that came before them. (*See* doc. 26, ¶¶ 34, 43, 46, 49, 53, 60, 64). It falls into the second category because Crockett's amended complaint is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Weiland,* 792 F.3d at 1321-23. You don't have to take my word for it; look at some examples of Crockett's claims. For instance, here is the entirety of her Count II "Fair Debt Collection Practices Act" claim:

> **COUNT II – FAIR DEBT COLLECTION PRACTICES ACT**
>
> **(15 U.S.C. § 1692 et** seq.)
>
> **43.** Plaintiff realleges paragraphs 1–40.
>
> **44.** Defendants VU, T&B, and Nationstar misrepresented the identity of the creditor and pursued foreclosure without authority, violating 15 U.S.C. §§ 1692e and 1692f.
>
> **45.** Plaintiff seeks actual and statutory damages, costs, and other relief under 15 U.S.C. § 1692k.

(Doc. 26, p. 11). And her Count IV "Civil RICO" claim:

> **COUNT IV – CIVIL RICO (18 U.S.C. §§ 1961–1964)**
>
> **49.** Plaintiff realleges paragraphs 1–46.
>
> **50.** Defendants VU, Nationstar, Cooper, and T&B used U.S. mail and interstate wires to obtain money and property and to execute a fraudulent foreclosure scheme.
>
> **51.** Predicate acts include mail fraud (18 U.S.C. § 1341) and wire fraud (18 U.S.C. § 1343), constituting a pattern of racketeering activity under 18 U.S.C. § 1961.
>
> **52.** Plaintiff seeks treble damages, costs, and appropriate relief under 18 U.S.C. § 1964(c).

(Doc. 26, p. 12). Or her Count VI "Slander of Title, Credit Defamation, and Emotional Distress" claim:

> **COUNT VI – SLANDER OF TITLE, CREDIT DEFAMATION, AND EMOTIONAL DISTRESS**
>
> **60.** Plaintiff realleges paragraphs 1–55.
>
> **61.** Recording of a void foreclosure deed published false statements impairing Plaintiff's title and credit.
>
> **62.** Nationstar and Cooper furnished false adverse credit information to CRAs, damaging Plaintiff's reputation and creditworthiness.
>
> **63.** Defendants' actions caused severe emotional distress. Plaintiff seeks compensatory and punitive damages.

(Doc. 26, p. 14). As you can see, Crockett's claims consist of a couple vague and conclusory sentences and no substance. But that's not all.

To Crockett's credit, her amended complaint does not fall into the third type of shotgun pleading because she does separate her different causes of action into separate counts. But some of her claims do fall into the fourth category; Crockett "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Weiland,* 792 F.3d at 1321-23.

For example, Crockett asserts her Wrongful Foreclosure claim (Count I) against "Defendants *including but not limited to* VU, Nationstar, Cooper, T&B, attorneys Rutledge and Crowe[.]" (Doc. 26, ¶ 34A) (emphasis added). Crockett uses the same "including but not limited to" language in her Fraud and Misrepresentation claim (Count V), (doc. 26, ¶ 55A), and again in her Civil Rights claim (Count VII), (doc. 26, ¶ 65). This language is both overly inclusive and non-descriptive. If the claim is purportedly asserted against every Defendant, like in Count VII, then whom exactly is the claim "not limited to"? Furthermore, when Crockett asserts that "Defendants conspired to deprive Plaintiff of constitutional rights … and certain Defendants failed to prevent such deprivation," (doc. 26, p. 14), how are the Defendants or the court supposed to determine which out of the 13 Defendants was part of this conspiracy? Were they a

16

conspirator, or did they fail to prevent the conspiracy? What specific conduct did those "Defendants" participate in that constitutes a conspiracy? Crockett's amended complaint fails to adequately answer these questions.

For these reasons, independently and collectively, the court finds that Crockett's amended complaint is an impermissible shotgun pleading and will be dismissed.

### B. Failure to State a Claim

Setting aside the shotgun pleading problems, each of Crockett's seven counts is insufficient to state a claim upon which relief can be granted. Below, the court addresses Crockett's claims under Rule 12(b)(6) in the order that Crockett pleads them.

<u>Count I: State Law Wrongful Foreclosure</u>

Crockett's first count is a state law wrongful foreclosure claim that she asserts against "Defendants including but not limited to VU, Nationstar, Cooper, T&B, attorneys Rutledge and Crowe[.]" (Doc. 26, p. 9). The gist of this claim is that the foreclosure of the Property was wrongful because of "fraudulent conveyances" and a "lack of delivery and void deed." (Doc. 26, ¶¶ 34-42). This claim has several flaws that are independently sufficient to dismiss Count I.

First, if the court accepts Crockett's factual allegations as true, which it must at this stage, Crockett lacks standing to assert the wrongful foreclosure claim because Crockett has no interest in the Property. Crockett alleges that on February 9, 2025, acting through her attorney-in-fact, Amma Zulu, she executed a quitclaim deed conveying title to the Property to the Zulu Family Trust. (Docs. 26, p. 7; 66-7). If the court accepts this as true, Crockett is not the proper party to bring this action because she conveyed away her interest in the property.

The general rule under Alabama law is that "any cause of action initiated on behalf of a trust for conduct damaging the assets of the trust

belongs to the trustee of that trust and that before a beneficiary may proceed with filing a derivative claim on behalf of the trust, the beneficiary 'must first move the trustee to act, or show some sufficient reason for the failure to do so.'" *Ex parte Callan Associates, Inc.*, 87 So. 3d 1161, 1165 (Ala. 2011) (quoting *Blackburn v. Fitzgerald*, 30 So. 568, 568 (1901)). Crockett has not pleaded that she moved the trustee to act, nor has she pleaded good cause for her failure to do so.

There are exceptions for derivative claims filed by a beneficiary, *see Ex parte Callan*, 30 So. 568 at 1166, but none apply to the allegations in the operative complaint. What the amended complaint and its attachments suggest, however, is either (1) that Crockett is not the beneficiary of the Zulu Family Trust, or (2) that Crockett is not the *only* beneficiary to the trust, in which case she would need an attorney to assert the claim on behalf of the trust. (*See* doc. 26, p. 35). Either way, Crockett proceeding with this claim *pro se* is not the proper course.

As for Crockett's wrongful foreclosure claim more generally, it has no legal merit whatsoever. There are only four circumstances that render a foreclosure sale void in Alabama. *See Campbell v. Bank of Am., N.A.*, 141 So. 3d 492, 495-496 (Ala. Civ. App. 2012). The only one relevant here is "when the foreclosing entity does not have the legal right to exercise the power of sale, as, for example, when that entity is neither the assignee of the mortgage, nor the holder of the promissory note at the time it commences the foreclosure proceedings[.]" *Id.* at 495 (citation omitted). "Alabama has long recognized a cause of action for 'wrongful foreclosure' arising out of the exercise of a power-of-sale provision in a mortgage. However, it has defined such a claim as one where 'a mortgagee uses the power of sale given under a mortgage for a purpose other than to secure the debt owed by the mortgagor.'" *Jackson v. Wells Fargo Bank, N.A.*, 90 So. 3d 168, 171 (Ala. 2012) (quoting *Reeves Cedarhurst Dev. Corp. v. First Am. Fed. Sav. & Loan Ass'n*, 607 So.2d 180, 182 (Ala.1992)).

Crockett's theory of wrongful foreclosure is that Veterans did not have legal authority to foreclose on the property because she essentially

revoked her mortgage contract five years after she entered it. (Doc. 26, p. 37). That is not how contracts work. If a person could simply enter a mortgage and then, when they got tired of making payments, "revoke" the contract, stop paying, and keep the property, contracts, and mortgages would be meaningless. Crockett's mortgage and foreclosure deed confirm that Veterans had authority to foreclose on the Property as the mortgagee. (*See* docs. 66-2, 66-4). And nothing in the amended complaint, its attachments, or the other publicly recorded documents in the record show that Veterans' nonjudicial foreclosure of the Property was "for a purpose other than to secure the debt owed by [Crockett]." *Jackson*, 90 So. 3d at 171. So the court will dismiss Crockett's Count I Wrongful Foreclosure claim.

### Count II: FDCPA Claims

In Count II, Crockett alleges that Defendants violated the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* (Doc. 26, p. 11). As the court has shown, the only allegation within this count is that Defendants "misrepresented the identity of the creditor and pursued foreclosure without authority[.]" (Doc. 26, p. 11). This allegation is not enough for the court to attempt a thorough analysis. But the court will briefly explain why Crockett has not stated a plausible claim.

Crockett does not properly allege or establish which Defendants, if any, qualify as a "debt collector" as the term is defined under the FDCPA. *See* 15 U.S.C. § 1692a. Crockett has not shown that any Defendant used any false, deceptive, or misleading representation or means in connection with the collection of any debt. *See* 15 U.S.C. § 1692e. Nor that any Defendant used any unfair or unconscionable means to collect or attempt to collect any debt. *See* 15 U.S.C. § 1692f. In short, Crockett has not alleged any plausible claim that Defendants violated the FDCPA. So Count II fails as well.

Count III: TILA Claims

In Count III, Crockett alleges that Defendants violated the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, by failing to disclose "material facts about the securitization and sale/transfer of Plaintiff's note and servicing," which purportedly deprived her of her statutory right(s). (Doc. 26, ¶47). She further contends equitable tolling should be applied to her otherwise time-barred claim. (Doc. 26, at ¶48).

The declared purpose of the TILA is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices.*" Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998) (quoting 15 U.S.C. § 1601(a)). The Act provides a private right of action against "any creditor who fails to comply with any requirement" of the Act. 15 U.S.C. § 1640(a). But such a claim is subject to a one-year statute of limitations "from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). "The violation 'occurs' when the transaction is consummated. Nondisclosure is not a continuing violation for purposes of the statute of limitations." *In re Smith*, 737 F.2d 1549, 1552 (11th Cir. 1984).

Setting aside that Crockett's amended complaint is devoid of facts that would prove Defendants violated the TILA, her claim depends on a loan that occurred in December 2020, nearly five years before she filed her complaint. To the extent that Crockett is asserting a right of rescission under the TILA, that claim is also time barred because such an action must be filed within "three years after the date of the consummation of the transaction or upon the sale of the property, whichever occurs first." 15 U.S.C. § 1635(f)[4]. So Crockett's claim is time-barred and her request for equitable tolling is unavailing.

---

[4] 15 U.S.C. § 1635(f), which provides the right to rescind, is a statute of repose, not a statute of limitations, and as such is not subject to equitable tolling. *Beach*, 523 U.S.

Claims of equitable tolling are subject to the heightened pleading standards of Federal Rule of Civil Procedure 9(b). And in the context of a TILA claim, a plaintiff "who attempts to avail himself of equitable tolling must establish some fraudulent conduct or concealment other than the mere nondisclosure in the loan documents that constitutes the TILA violation itself." *Williams v. Saxon Mortg. Servs., Inc.*, 2007 WL 2828752, at *4 (S.D. Ala. Sept. 27, 2007). Here, the "fraudulent conduct or concealment" that can best be surmised from Crockett's amended complaint is the same conduct underlying Defendants' alleged violation of the TILA. So even if Crockett had met Fed. R. Civ. P. 9(b)'s heightened pleading standards (which, to be clear, she did not), equitable tolling would still be inappropriate in this context.

That Crockett did not understand, or did not accept, the servicing arrangements of her mortgage does not create a cause of action under this statute. And even if it did, and had Crockett adequately pleaded such a claim, her claim is still barred by the statute of limitations.

### Count IV: Civil RICO Claims

Next, Crockett asserts a civil claim under the Racketeering Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961-1964. In it, she alleges that "Defendants VU, Nationstar, Cooper, and T&B used U.S. mail and interstate wires to obtain money and property and to execute a fraudulent foreclosure scheme." (Doc. 26, p. 12).

To state a civil RICO claim, Crockett must sufficiently allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity" that caused injury to her business or property. *Lehman v. Lucom*, 727 F.3d 1326, 1330 (11th Cir. 2013); 18 U.S.C. § 1962(c). And because Defendants' alleged predicate "pattern of racketeering" activity is based on mail and/or wire fraud, Crockett must also allege (1) the existence of a scheme to defraud another of money or property, (2) that Defendants intentionally participated in that scheme, and (3) used the mails or wires

---

410, 412 (1998) ("we ... hold that § 1635(f) completely extinguishes the right of rescission at the end of the 3–year period").

to do so. *See Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010).

The Eleventh Circuit has explained that when a plaintiff asserts a RICO claim based entirely on predicate acts of mail and wire fraud, "their substantive RICO allegations must comply not only with the plausibility criteria articulated in *Twombly* and *Iqbal* but also with Fed. R. Civ. P. 9(b)'s heightened pleading standard, which requires that '[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.'" *Am. Dental Ass'n*, 605 F.3d at 1291; *see also Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1316 (11th Cir.2007) (holding that civil RICO claims, which are "essentially a certain breed of fraud claims, must be pled with an increased level of specificity" under Rule 9(b)). So, under Rule 9(b), Crockett must allege: "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud." *Am. Dental Ass'n*, 605 F.3d at 1291; *see also Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1380–81 (11th Cir.1997) (applying the requirements to a RICO fraud complaint). And Crockett "must allege facts with respect to each defendant's participation in the fraud." *Am. Dental Ass'n*, 605 F.3d at 1291.

Crockett's Count IV RICO claim fails to sufficiently plead the elements of a RICO claim, fails to sufficiently plead the elements of a mail/wire fraud claim, and fails to meet Rule 9(b)'s heightened pleading requirement. In fact, her entire RICO count consists of just four sentences: one realleging the preceding paragraphs, two vague and conclusory sentences merely asserting that Defendants committed RICO violations and mail fraud, and one sentence requesting damages. (*See* doc. 26, p. 12). This is not enough. So the court will dismiss Crockett's RICO claim.

### Count V: Fraud and Misrepresentation

In her next count, Crockett asserts a "Fraud and Misrepresentation" claim, though it is unclear whether her claim is based on Alabama State law or federal statutes. (*See* doc. 26, pp. 12-13). Her claim appears to be broken into two parts. In the first, Crockett asserts that the T&B Defendants "recorded a false foreclosure deed and concealed investor identity" and that the Nationstar and T&B Defendants, "with notice of Plaintiff's quitclaim deed and lis pendens (February 2025), knowingly recorded a deed that mis represented creditor authority and clouded title." (*Id.*) The second part pertains to "Fraudulent Concealment" which Crockett describes as follows:

> **55A. Fraudulent Concealment**. Defendants, including but not limited to Nationstar Mortgage LLC (d/b/a Mr. Cooper), Mr. Cooper Group Inc., Veterans United Home Loans, and Tiffany & Bosco, P.A., engaged in a continuing course of fraudulent concealment by intentionally suppressing material facts that they had a legal and equitable duty to disclose.
>
> **56.** Defendants concealed defects in conveyance to Plaintiff's detriment.
>
> **57.** Defendants concealed the true ownership and securitization of Plaintiff's note and mortgage, their lack of authority to service or enforce the instrument, and the post-litigation alteration of Plaintiff's credit data. These omissions were made with intent to mislead Plaintiff and the Court, to obscure the true creditor, and to prevent discovery of their unlawful conduct. Such concealment tolls all applicable statutes of limitation and constitutes continuing fraud under Alabama and federal law, further supporting Plaintiff's claims under 15 U.S.C. § 1692e, § 1692f, and 18 U.S.C. §§ 1341, 1343, 1962, and 1964.
>
> **58.** Removal of the MERS record naming Ginnie Mae as investor further supports deliberate concealment.

(*Id.*)

Regardless of whether Crockett's fraud and misrepresentation claim arises under state or federal law, it is held to the same heightened Rule 9(b) pleading requirements that applied to her RICO claim. And here too, Crockett has failed to meet that heightened standard of specificity.

Plus, looking beyond Crockett's bare assertions, nothing in the record suggests that Defendants did anything fraudulent. Crockett's "revocation of power of attorney" and revocation of her mortgage carry no legal weight. Just because the Defendants proceeded with the servicing of the mortgage and foreclosing on the Property, despite Crockett's irrelevant "revocation," does not make their conduct fraudulent.

The court also notes that if Crockett's fraud claim is based on an alleged fraud or misrepresentation at the time she executed the Mortgage, or when it was it is securitized, that claim is barred by the statute of limitations. *See* Ala. Code § 6-2-38 (l) (1975) ("All actions for any injury to the person or rights of another not arising from contract and not specifically enumerated in this section must be brought within two years.") "Fraud is discoverable as a matter of law for purposes of the statute of limitations when one receives documents that would put one on such notice that the fraud reasonably should be discovered." *Liberty Nat. Life Ins. Co. v. Parker*, 703 So. 2d 307, 308 (Ala. 1997). So if the alleged fraud or misrepresentation is tied to the Mortgage, it became discoverable when she received and executed the mortgage in December 2020—nearly five years before she filed her original complaint. *See Colafrancesco v. Crown Pontiac-GMC, Inc.*, 485 So. 2d 1131, 1134 (Ala. 1986).

For these reasons, the court will dismiss Crockett's Count V fraud and misrepresentation claim.

### Count VI: Slander of Title, Credit Defamation, Emotional Distress

In her next cause of action, Crockett combines three claims, "Slander of Title, Credit Defamation, and Emotional Distress," into a single count. (*See* doc. 26, p. 14). The court will address them in the order that Crockett pleads them.

1. *Slander of title*: To prove slander of title under Alabama law, Crockett must prove: "(1) Ownership of the property by plaintiff; (2) falsity of the words published; (3) malice of defendant in publishing the false

statements; (4) publication to some person other than the owner; (5) the publication must be in disparagement of plaintiff's property or the title thereof; and (6) that special damages were the proximate result of such publication (setting them out in detail)." *Merchants Nat. Bank of Mobile v. Steiner*, 404 So. 2d 14, 21 (Ala. 1981).

Based on Crockett's own allegation that she transferred her interest in the Property to the Zulu Family trust, (*see* doc. 26, p. 35), Crockett cannot meet the first element of ownership. Nor has Crockett adequately pleaded the other elements. Crockett's averment that the "[r]ecording of a void foreclosure deed published false statements impairing [her] title and credit," (doc. 26, p. 14), "is a general allegation of damages that comes nowhere close to pleading the type of special damages required for a viable slander of title action." *Goodreau v. US Bank Tr. Nat'l Ass'n*, 2019 WL 2601543, at *9 (N.D. Ala. June 25, 2019); *see also Rice v. Seterus, Inc.*, 2018 WL 513345, at *6 (N.D. Ala. Jan. 23, 2018); *Bush v. JPMorgan Chase Bank, N.A., et al.*, 2016 WL 324993, *11 (N.D. Ala. Jan. 27, 2016) (all dismissing claims when plaintiff asserts that a void foreclosure deed was recorded).

2. *Credit defamation*: To the extent that Crockett's credit defamation claim relates to or arises out of communications with credit reporting agencies, it is preempted by the Fair Credit Reporting Act ("FCRA"). *See Gregory v. Select Portfolio Servicing, Inc.*, 2016 WL 4540891, at *2—8 (N.D. Ala. Aug. 31, 2016) (discussing FCRA preemption). And Crockett has not pleaded a valid FCRA claim.

3. *Emotional distress*: To recover for intentional infliction of emotional distress, which is also known as the tort of outrage, Crockett must prove "that the defendant's conduct (1) was intentional or reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it." *Green Tree Acceptance, Inc. v. Standridge*, 565 So.2d 38, 44 (Ala. 1990); *see also Buckentin v. SunTrust Mortg. Corp.*, 928 F. Supp. 2d 1273, 1287 (N.D. Ala. 2013). The conduct "must be so extreme in degree as to go beyond all

possible bounds of decency and be regarded as atrocious and utterly intolerable in a civilized society." *Id.* Crockett cannot recover for "mere insults, indignities, threats, or annoyances, petty oppressions, or other trivialities." *Am. Road Service Co. v. Inmon*, 394 So.2d 361, 364-65 (Ala. 1980).

Nothing in Crockett's complaint comes close to the "extreme," "utterly intolerable" conduct that an outrage claim is designed to protect against. *Buckentin*, 928 F. Supp. 2d at 1287. So Crockett's many claims in Count VI are all due to be dismissed.

### Count VII: Civil Rights Claims

Crockett's last claim is for Civil Rights Violations under 42 U.S.C. §§ 1983, 1985, and 1986. (*See* doc. 26, pp. 14-15). She asserts this claim against the Nationstar Defendants, the T&B Defendants, and the St. Clair County Defendants. The court addresses each of three federal statutes that Crockett identifies as the basis of her claims in turn.

1. *Section 1983:* To state a claim for relief in an action brought under 42 U.S.C. § 1983, Crockett must establish that she was "deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law. Like the state-action requirement of the Fourteenth Amendment, the under-color-of-state-law element of § 1983 excludes from its reach 'merely private conduct, no matter how discriminatory or wrongful.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999). A private party may be considered a state actor for purposes of § 1983 only in the "rare circumstances" that one of three tests is satisfied: the state compulsion test, the public function test, or the nexus/joint action test. *See Rayburn ex rel. Rayburn v. Hogue*, 241 F.3d 1341, 1347 (11th Cir. 2001).

Here, most of the Defendants targeted by Crockett's § 1983 claim, the Nationstar and T&B Defendants, are private parties. Nothing in Crockett's amended complaint suggests that any conduct by these

26

Defendants would be attributable to the states under any test. So Crockett's § 1983 claim against these Defendants must be dismissed.

As for the St. Clair County Defendants, they are Alabama state officers or employees, and Crockett's allegations relate to their official conduct as state employees. But the St. Clair County Defendants are immune from Crockett's claims. To the extent that Crockett's claims against State officers, employees, and agents in their official capacities are really suits against the State, the St. Clair County Defendants are immune from those claims under Article I, Section 14 of the Alabama Constitution. *See Haley v. Barbour Cnty.*, 885 So. 2d 783, 788 (Ala. 2004).

Insofar as Crockett's claims against the St. Clair County Defendants relate to their official participation in the Crockett's state court case, Defendants are also entitled to judicial or quasi-judicial immunity. Defendants Judge Billy R. Weathington, Jr., Judge Andrew Weathington have judicial immunity from liability for actions taken in their official capacity. *See City of Bayou La Batre v. Robinson,* 785 So. 2d 1128, 1132 (Ala. 2000). Similarly, judicial immunity extends to a clerk of court, like Defendant Circuit Clerk Burke, "where a clerk of court is performing a duty that requires the exercise of judgment and discretion in its performance, it is considered a judicial act entitling the clerk to judicial immunity. This absolute immunity for acts within the jurisdiction of the judicial officer is extended even where the officer acts in error, maliciously, or in excess of his authority." *Id.* (citation omitted). So Defendant Burke is also entitled to immunity from claims against her for her official conduct in Crockett's state court action.

In an abundance of caution, the court also notes that Crockett's operative complaint has no plausible factual allegations that would support a § 1983 for declaratory or injunctive relief. Because most of the Defendants are private parties, the state employees are immune, and the complaint does not adequately allege any facts that would entitle Crockett to declaratory or injunctive relief, Crockett's § 1983 claim should be dismissed.

27

2. *Section 1985*: Title 42, Section 1985 provides that "in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators." Section 1985 is broken into three subsections: (1) "Preventing officer from performing duties"; (2) "Obstructing justice; intimidating party, witness, or juror"; and (3) "Depriving persons of rights or privileges." *Id.* Crockett does not clarify which subsection of § 1985 applies to her claim, so the court will take a stab at the two that might be implicated by Crockett's single sentence allegation that Defendants "deprived [her] of property without due process of law through recording of a fraudulent foreclosure deed and interference in quiet-title proceedings tainted by conflicts of interest." (Doc. 26, p. 14).

The court starts with § 1985(2). This subsection describes two broad categories of conspiracies: (1) "conspiracies that are designed to obstruct the course of justice in the federal judicial system" and (2) "conspiracies designed to interfere with the equal protection of the laws." *Bradt v. Smith*, 634 F.2d 796, 800-801 (5th Cir. 1981). A plaintiff alleging a conspiracy to obstruct justice under the first category "must show a nexus between the alleged conspiracy and a proceeding in federal court." *Id.* And for the second category, a conspiracy to interfere with the equal protection of laws, the plaintiff "must show a racial or otherwise class-based discriminatory animus." *Id.*

Crockett's complaint fails to allege any facts that would place her claim within either category of conspiracy under § 1985(2). Crockett's operative complaint only reaches the series of events in state court, not federal court, so the first category of conspiracy doesn't fit. And Crockett does not allege any racial or otherwise class-based discriminatory animus,

which means the second category doesn't fit either. Accordingly, if Crockett is asserting a claim under § 1985(2), it fails.

Then we have § 1985(3). This subsection, unlike its antecedent in § 1985(2), *can* apply to purely private conduct as well conspiracies under color of state law. *See Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 268 (1993). But to prevent this statute from being applied as a general federal tort law, courts have interpreted this provision to require "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Park v. City of Atlanta*, 120 F.3d 1157, 1161 (11th Cir. 1997) (*quoting Griffin v. Breckenridge*, 403 U.S. 88 at 97, 102 (1971); *see also Bray*, 506 U.S. at 268. And as the court has already pointed out, Crockett has not alleged a racial or otherwise class-based invidious discrimination. So she has not pleaded a valid claim under § 1985(3) either.

3. *Section 1986*: Section 1986 provides a cause of action against anyone who has "knowledge that any of the wrongs conspired to be done, and mentioned in § 1985 of this title, are about to be committed, and having the power to prevent or aid in preventing the commission of the same, neglects or refuses so to do." 42 U.S.C. § 1986. Thus, "[t]he text of § 1986 requires the existence of a § 1985 conspiracy." *Park v. City of Atlanta*, 120 F.3d 1157, 1160 (11th Cir. 1997). As the court just explained, Crockett has not sufficiently alleged a § 1985 conspiracy, so she likewise cannot have a claim under § 1986.

—

To sum up, the court will **dismiss** Crockett's complaint for two independent reasons: (1) the entire complaint is a shotgun pleading, and (2) none of the claims, as pleaded, would entitle Crockett to relief.

The court already gave Crockett one chance to replead her complaint after seeing Defendants' motions to dismiss (doc. 23). And giving Crockett more chances to amend her complaint would be futile, as none of the claims she has pleaded or tried to plead would entitle her to relief—just as Crockett's attempt to add me as a defendant would not

entitle her to relief. So the court makes this dismissal **with prejudice**. Should Crockett disagree, she may appeal this decision to the Circuit Court in compliance with the rules of that court.

## CONCLUSION

For these reasons, the court:

- **DENIES** Crockett's Motion for Leave to File Supplemental Pleading, (doc. 110);
- **DENIES** Crockett's Supplemental Pleading and Motion for Assessment of Damages, (doc. 142);
- **GRANTS** Defendants Kathryn Burke, Andrew Weathington, and Billy R Weathington, Jr.'s Motion to Dismiss, (doc. 42);
- **GRANTS** Defendants Enslen Lamberth Crowe, Jessica Virginia Rutledge, and Tiffany & Bosco PA's Motion to Dismiss, (doc. 47);
- **GRANTS** Defendant Ginnie Mae REMIC Trust 2021-018's Motion to Dismiss, (doc. 65);
- **GRANTS** Defendants Mortgage Research Center LLC, Mr. Cooper Group Inc, Nationstar Mortgage Holdings Inc, Nationstar Mortgage LLC, and Xome Inc.'s Motion to Dismiss, (doc. 66);
- **DENIES AS MOOT** Defendants Enslen Lamberth Crowe, Jessica Virginia Rutledge, and Tiffany & Bosco PA's Motion to Strike, (doc. 48);
- **DENIES AS MOOT** Crockett's Motion to Preserve and Certify Docket Record, (doc. 101);
- **DENIES AS MOOT** Crockett's Motion for Clarification, (doc. 111);
- **DENIES AS MOOT** Crockett's Motion to Address Discrepancy, (doc. 120); and
- **DENIES AS MOOT** Crockett's Motion to Preserve Objection and Request for Judicial Notice, (doc. 125).

The court will enter a separate order consistent with this memorandum opinion that **DISMISSES** this case **WITH PREJUDICE** and closes this case.

The court **DIRECTS** the Clerk of Court to send a copy of this order to Crockett at her address of record.

**DONE** and **ORDERED** on May 5, 2026.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE